UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
---------------------------------------------------------X

KELLY BRENNAN,

                              Plaintiff,                  **MEMORANDUM AND ORDER**
                                                                                                       CV-14-3165 (DRH)

       - against -

CAROLYN W. COLVIN,
Acting Commissioner of Social Security,

                              Defendant.

---------------------------------------------------------X

**APPEARANCES:**

**For the Plaintiff**:
Office of Christopher James Bowes
54 Cobblestone Drive
Shoreham, NY 11786
By:    Christopher James Bowes, Esq.

**For the Defendant**:
United States Attorneys Office
Eastern District of New York
271 Cadman Plaza East
Brooklyn, NY 11201-1820
By:    Gail A. Matthews, Esq.

**HURLEY, Senior District Judge**:

        Kelly Brennan ("Brennan" or "plaintiff") commenced this action pursuant to 42 U.S.C. § 405(g) seeking judicial review of a final decision by the Commissioner of Social Security ("Commissioner" or "defendant"), denying her claim for disability benefits. Presently before the Court is the defendant's motion for judgment on the pleadings affirming the Commissioner's decision to deny plaintiff Social Security disability benefits as well as plaintiff's cross motion for judgment on the pleadings vacating that decision and remanding this action for additional

administrative proceedings. For the reasons set forth below, the plaintiff's motion is denied and the defendant's motion is granted.

## BACKGROUND

### I. Procedural Background

Plaintiff applied for Social Security disability insurance benefits under the Social Security Act (the "SSA") in October of 2011. (Transcript ("Tr.") 110-116.) Plaintiff alleges that since August 10, 2011, she has been disabled due to asthma, sinusitis, impaired voice, and gastrointestinal reflux disease (GERD). (Tr. 144.) Her application for disability was denied on February 10, 2012 (Tr. 56), and plaintiff subsequently requested a hearing before an administrative law judge ("ALJ"). A hearing was held before ALJ Ronald L. Waldman on November 19, 2012, with both plaintiff and her attorney present. (Tr. 21-52.) The ALJ issued a decision on December 20, 2012, finding that plaintiff was not disabled within the meaning of the SSA. (Tr. 7-16.) Plaintiff then requested a review by the Appeals Council ("AC"). By notice dated March 20, 2014, the AC denied plaintiff's request for review, thereby finding that the ALJ's decision became "the final decision of the Commissioner." (Tr. 1; *see* 20 C.F.R. § 404.981 (1987) ("[T]he decision of the administrative law judge if the request for review is denied, is binding unless you or another party file an action in Federal district court . . . .").) Subsequently, plaintiff appealed the Commissioner's decision to this Court.

### II. Factual Background

Plaintiff was born on May 18, 1977 and was a police officer for the City of New York from 1999 to September of 2011. (Tr. 110, 153, 180.) After performing cleanup work at the World Trade Center in September and October of 2001, she developed significant and chronic sinusitis which necessitated surgery in December of 2002. (Tr. 197-99.) She also required a

second sinus surgery in December of 2008. (Tr. 211.) On October 8, 2010, the Board of Trustees for the Police Pension Fund issued a decision approving plaintiff's application for accident disability retirement based on her recurrent episodes of sinusitis and difficulty speaking. (Tr. 117-19.) As mentioned above, plaintiff subsequently applied for Social Security Disability benefits in October of 2011.

*Medical Evidence of Plaintiff's Condition*

On December 8, 2011, Dr. Milan Amin completed a medical report at the Commissioner's request. The report stated that plaintiff had a vocal cord scar, chronic hoarseness, and a weak voice. (Tr. 273.) Dr. Amin also found that plaintiff experienced vocal fatigue due to voice usage. (Tr. 274.)

On February 7, 2012, Dr. Evelyn Wolf examined plaintiff on behalf of the Social Security Administration. (Tr. 282-85.) Dr. Wolf found that plaintiff had chronic asthma, sinusitis, a cough, and a sore throat since September 11, 2001. However, Dr. Wolf found that plaintiff was "not limited in walking, standing, or climbing," and had "[n]o limitation in sitting provided she [could] stretch from time to time." (Tr. 284.) She also found that plaintiff was not limited in lifting or in the use of her hands.

On September 24, 2012, Dr. George Blatti, wrote a letter "[t]o whom it may concern" stating that he was treating plaintiff for her asthma, chronic allergic rhinitis, and chronic sinusitis. (Tr. 299.) The letter advised plaintiff to "remain vigilant regarding the air quality in her environment to minimize the potential of activating this multiple symptom complex, and to take her medications regularly." Dr. Blatti also noted that plaintiff remained unable to sustain work in any adverse respiratory environment.

On September 25, 2012, Dr. Amin re-examined plaintiff, noting that she had no improvement since her last visit and that she had a chronic vocal scar fold. (Tr. 300-01.) However, he also noted that she was able to communicate well, though her voice was raspy. He recommended that she limit voice usage given that excessive use or use in loud environments would likely cause worsening of her condition.

On December 14, 2012, Dr. Joseph Jacobs, wrote a letter explaining that he had been treating plaintiff since July 17, 2008. (Tr. 335.) He stated that plaintiff continued to suffer from chronic rhinosinusitis and impaired voice that rendered plaintiff unable to work and that plaintiff required additional sinus surgery.

## *DISCUSSION*

**I.** *Standard of Review*

    **A.** *Review of the ALJ's Decision*

In reviewing a decision of the commissioner, a court may "enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g). However, the court may set aside a determination of the ALJ only if it is "based upon legal error or is not supported by substantial evidence." *Rosa v. Callahan*, 168 F.3d 72, 77 (2d Cir. 1999) (internal quotation marks and citation omitted). "Substantial evidence is 'more than a mere scintilla,' and is 'such relevant evidence as [a] reasonable mind might accept as adequate to support a conclusion.'" *Jasinski v. Barnhart*, 341 F.3d 182, 184 (2d Cir. 2003) (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)). Furthermore, the findings of the Commissioner as to any fact, if supported by substantial evidence, are conclusive, 42 U.S.C. § 404(g), and thus, the reviewing court does not decide the case *de novo*. *Halloran v. Barnhart*,

362 F.3d 28, 31 (2d Cir. 2004). Thus, the only issue before the Court is whether the ALJ's finding that plaintiff was not eligible for disability benefits was "based upon legal error or is not supported by substantial evidence." *Rosa*, 168 F.3d at 77.

### B. *Eligibility for Benefit*

To be eligible for disability benefit under the SSA, a claimant must establish that he is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The SSA further states that this impairment must be "of such severity that [the claimant] is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy . . . ." *Id.* § 423(d)(2)(A).

The SSA has promulgated regulations prescribing a five-step analysis for evaluating disability claims. *See* 20 C.F.R. § 404.1520 (2012). This Circuit has described the procedure as follows:

> First, the [Commissioner] considers whether the claimant is currently engaged in substantial gainful activity. If he is not, the [Commissioner] next considers whether the claimant has a "severe impairment" which significantly limits his physical or mental ability to do basic work activities. If the claimant suffers such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment which is listed in Appendix 1 of the regulations. If the claimant has such an impairment, the [Commissioner] will consider him disabled without considering vocational factors such as age, education, and work experience . . . . Assuming the claimant does not have a listed impairment, the fourth inquiry is whether, despite the claimant's severe impairment, he has the residual functional capacity to perform his past work. Finally, if the claimant is unable to perform his past work, the [Commissioner] then determines whether there is other work which the claimant could perform.

5

*Rosa*, 168 F.3d at 77 (alterations in original) (quoting *Berry v. Schweiker*, 675 F.2d 464, 467 (2d Cir. 1982) (per curium)). The claimant bears the burden of proof at steps one through four, while the burden shifts to the Commissioner at step five to show that the claimant is capable of working. *Green-Younger v. Barnhart*, 335 F.3d 99, 106 (2d Cir. 2003).

## II.     *The ALJ's Decision*

Applying the five-step analysis detailed in 20 C.F.R. § 404.1520, the ALJ found that plaintiff satisfied the first two steps of the analysis as follows: (1) plaintiff had not engaged in substantial gainful activity since August 10, 2011; and (2) plaintiff's "asthma and chronic sinusitis and rhinitis with a chronic cough, sore throat and a raspy voice" constituted severe impairments. (Tr. 12.) In analyzing step three, the ALJ found that plaintiff did not have an impairment or a combination of impairments that met or equaled one of the impairments listed in Part 404, Subpart P, Appendix 1 of the regulations. (*Id.*)

Before proceeding to steps four and five, the ALJ found that plaintiff's condition limited her to sedentary work,[1] that she needed to avoid exposure to respiratory irritants, and that she was limited to performing jobs requiring only occasional speaking of no longer than 10 minutes at a time. (*Id.*) In making this finding, the ALJ considered "all [of plaintiff's] symptoms and the extent to which these symptoms [could] reasonably be accepted as consistent with objective medical evidence." (Tr. 13.) The ALJ gave great weight to the opinion of Dr. Blatti, one of plaintiff's treating physicians who opined that plaintiff was unable to sustain work in an adverse respiratory environment. From this testimony, the ALJ inferred that plaintiff "would be able to

---

[1] Sedentary work is defined as work that involves "lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools" and is performed primarily in a seated position, although walking and standing are required occasionally, i.e., no more than one-third of the time. SSR 83-10, 1983 WL 31251 (Jan. 1, 1983).

6

sustain work in a hospitable respiratory environment." (Tr. 14.) The ALJ also relied upon plaintiff's own testimony that she could "lift and carry and sit and stand without any problem and talk and make herself understood for up to 1/3 of the workday if broken up to 10 minutes of speaking at one time." (Tr. 13.)

The ALJ then proceeded to steps four and five of the analysis. At step four, the ALJ determined that plaintiff was unable to perform her past work as a police officer. (Tr. 14.) This was primarily based on the testimony of the vocational expert, who stated that the work of a police officer was skilled medium work according to the Dictionary of Occupational Titles and that a person with plaintiff's limitations would not be able to perform this work. (*Id.*)

Finally, turning to step 5 of the analysis – whether plaintiff, given her residual capacity to perform sedentary work, was capable of performing any job in the national economy – the ALJ found that "[c]onsidering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform." (*Id.*) This finding was based on the testimony of the vocational expert, who testified that a person with plaintiff's limitations would be able to perform the requirements of sedentary occupations such as an addressing clerk, a sorting clerk, a general office clerk, and a surveillance system monitor, and that none of these jobs involved exposure to respiratory irritants. (Tr. 15.) Thus, the ALJ concluded that plaintiff was not disabled from August 10, 2011 through the date of the ALJ's decision. (*Id.*)

### III.    The Parties' Arguments

Plaintiff argues that the ALJ's decision must be reversed for the following reasons:

> [T]he [ALJ] found that Ms. Brennan's vocal cord scarring and edema limited her to just to [sic] "occasional" talking during the workday and yet the vocational expert presented jobs requiring "frequent" talking. Similarly, Ms. Brennan established that she

7

> could not tolerate talking in loud environments because her ineffective vocal quality and need to repeat herself when not heard against the background noise increased inflammation of her vocal cords. Yet the vocational expert also identified jobs that occurred in moderately noisy environments. In addition, while the ALJ agreed that Ms. Brennan could not tolerate exposure to cleaning products, dust, and heavy perfumes, his decision fails to establish that the alternative workplace environments proffered by the vocational expert would be any more cleaner [sic] than that as a restricted duty police officer.

(Pl.'s Mem. in Supp. at 1.) The Court will address each of these arguments in turn.

Plaintiff first argues that the ALJ's ruling should not be upheld because he relied on the vocational expert's testimony in finding that plaintiff could perform the jobs of addresser, sorting clerk, office clerk, and surveillance system monitor, but that testimony conflicted with the information found in the Dictionary of Occupational Titles ("DOT") and the companion job database, Selected Characteristics of Occupations ("SCO"). More specifically, although the vocational expert testified that a person who was limited in performing jobs requiring only occasional speaking of no longer than 10 minutes at one time could perform all four of the suggested jobs, (Tr. 51), for two of those jobs, office clerk and surveillance system monitor, the SOC states that frequent talking, meaning talking that occurs from one-third to two-thirds of an eight hour day, is required. As plaintiff states, "these [two] jobs identified by the vocational expert in fact require a considerable amount of talking throughout the work day, something the ALJ otherwise found Ms. Brennan could not do because of her voice limitations." (Pl.'s Mem. in Supp. at 15.) Moreover, plaintiff objects to the ALJ's failure to "either identify these conflicts or offer some way to reconcile the SCO job demands with the vocational expert's testimony." (*Id.*)

However, even if the Court were to find that a conflict exists between the SCO and the vocational expert's testimony, this conflict is not enough to disrupt the ALJ's decision because

there is no question that plaintiff would still be able to perform the addresser and sorting clerk jobs, which require only occasional speaking and themselves exist in the national economy in significant numbers. For purposes of step 5 of the analysis, "[w]ork exists in the national economy when there is a significant number of jobs (in one or more occupations) having requirements which you are able to meet with your physical or mental abilities and vocational qualifications." 20 C.F.R. § 404.1566(b). "[T]he Commissioner is to consider whether significant numbers exist 'either in the region where [the claimant lives] or in several other regions of the country' but the focus need not be on the immediate area in which an individual lives." *Bull v. Comm. of Social Sec.*, 2009 WL 799966, *6 (N.D.N.Y. Mar. 25, 2009) (citing 20 C.F.R. §§ 404.1566(a), 416.966(a). As the regulation notes, a finding of plaintiff's ability to perform even one occupation can be enough to satisfy the requirement that a significant number of jobs exist in the national economy. *See McQuaid v. Astrue*, 2012 WL 5472300, at *5 (N.D.N.Y. Nov. 9, 2012) (stating that "the finding of one job is sufficient to demonstrate that there is other work that [plaintiff] could perform"); *Bull*, 2009 WL 799966 at *6 (affirming ALJ's denial of benefits where ALJ relied on vocational expert's testimony that plaintiff could perform one occupation that existed in significant number, i.e., approximately 100,000 nationally and 125 locally). Here, given that addresser and sorting clerk jobs exist in the national economy in significant number, (100,000 for the addressing clerk and 2,700,000 for the sorting clerk), and also in large number in the greater New York area (10,000 for the addressing clerk and 160,000 for the sorting clerk) (Tr. at 50), it was proper for the ALJ to determine that plaintiff could perform other work.

Moreover, plaintiff's argument that the addresser and sorting clerk job are inappropriate because the SCO indicates that they have "moderate" noise levels is unconvincing. Plaintiff

9

argues that a moderate noise environment "is inappropriate in light of [plaintiff's] well-documented limitations," which "were not properly addressed by the vocational expert [or] the ALJ." (Pl's Mem. in Supp. at 16.) As defendant notes, however, while the ALJ did restrict plaintiff to work requiring only occasional speaking, he did not include a noise limitation in his finding. Moreover, the ALJ's decision not to impose a noise limitation on plaintiff's work environment is supported by substantial evidence. In particular, while Dr. Amin suggested that plaintiff's use of her voice in "loud environments" would cause inflammation (Tr. 301), he did not mention any restriction on plaintiff's ability to function in moderately noisy environments. Additionally, neither Dr. Blatti nor Dr. Wolf placed any noise limitation on plaintiff's potential work environment. Furthermore, plaintiff's own testimony about her daily activities indicates that she is able to function in a moderately noisy environment. Specifically, she stated that she went out to dinner, to the movies, and to the beach, and that she shops and runs errands at the post office and the bank. (Tr. 41-42, 165.) Plaintiff testified that throughout these daily activities she can generally make herself understood and made no mention of any limit to the type of noise environment she can withstand. (Tr. 42-43.) Thus, there was substantial evidence for the ALJ to conclude that plaintiff could perform the suggested jobs notwithstanding the fact that they are listed as occurring in an environment with moderate noise.

Finally, the plaintiff's argument that the ALJ failed to consider that the atmospheric conditions of the four recommended jobs could be harmful to plaintiff is unavailing. The SCO rates the atmospheric conditions for these occupations as "N," meaning not present. Plaintiff seems to argue that since the occupation of a police officer also has a rating of "N," and plaintiff is not fit to perform that occupation, then she is similarly unfit to perform the recommended jobs. According to plaintiff, "[t]here is nothing in the SCO that establishes that the jobs as a[n] office

clerk, sorter, addresser, or surveillance system monitor would be any more free of atmospheric conditions." (Pl.'s Mem. in Supp. at 19.)

There was, however, substantial evidence in the record for the ALJ to determine that plaintiff could perform those jobs given their atmospheric condition rating of "N." Specifically, the vocational expert testified that someone who required no "exposure to environmental or respiratory irritants," would be able to perform a job in an "office environment" that required "primarily clerical work." (Tr. 49.) The expert then listed the addresser, sorting clerk, surveillance monitor, and office clerk occupations as falling into this category. Indeed, they contain an N rating because there are no atmospheric conditions at those jobs. Moreover, the vocational expert did not testify that plaintiff was unable to perform any job with an "N" rating, but rather only that plaintiff was unable to perform her prior police officer job. Therefore, there was substantial evidence in the record for the ALJ to find that plaintiff was able to perform the four suggested jobs.

Though the plaintiff does not directly address this point, it is worth noting that the Appeals Council correctly found that the letter from Dr. Jacobs, which was not part of the record before the ALJ but was submitted for the first time to the Appeals Council, "does not provide a basis for changing" the [ALJ's] decision. (Tr. 2.) That letter stated that plaintiff was "disabled and unable to work." (Tr. 335.) However, that statement conflicts with substantial medical evidence in the record from Dr. Blatti, Dr. Amin, and Dr. Wolf, none of whom found that plaintiff was unable to work. Although the opinion of a plaintiff's treating physician is generally given more weight than other medical opinions, "the less consistent that opinion is with the record as a whole, the less weight it will be given." *Snell v. Apfel*, 177 F3d 128, 132 (2d Cir. 1999). Where, as here, the treating physician's opinion conflicts substantially with the other

11

evidence in the record, it is given little weight. Therefore, Dr. Jacobs's statement that the claimant is disabled does not require the court to disrupt the ALJ's denial of benefits.

## *CONCLUSION*

For the foregoing reasons, the defendant's motion is granted, the plaintiff's motion is denied, and the decision of the Commissioner is affirmed. The clerk of the Court is directed to close this case.

**SO ORDERED.**

Dated: Central Islip, New York
January 19, 2016                                                  /s/

Denis R. Hurley
Unites States District Judge